UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ARNO ENZERINK,

                Plaintiff,

- against -

CRANBURY OVERSEAS LIMITED
LIABILITY COMPANY,

                Defendant.
--------------------------------------------------------X

**REPORT AND RECOMMENDATION**
20 CV 292 (EK) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On January 16, 2020, plaintiff Arno Enzerink ("plaintiff") commenced this action against defendant Cranbury Overseas Limited Liability Company ("Cranbury" or "defendant"), seeking damages for alleged violations of the Copyright Act, 17 U.S.C. § 101 et seq. (Compl.[1] ¶ 1).

Despite proper service,[2] defendant failed to file an answer or otherwise respond to the Complaint. Accordingly, plaintiff moved for entry of default on June 2, 2020 and on June 9, 2020, the Clerk of Court entered a default against defendant. Plaintiff moved for default judgment and damages on July 30, 2020. Thereafter, on August 3, 2020, the Honorable Eric Komitee referred this matter to the undersigned to issue a Report and Recommendation.

For the following reasons, this Court respectfully recommends that plaintiff be awarded $30,000 in statutory damages, and $1,575 in attorneys' fees and costs, for a total of $31,575.00.

---

[1] Citations to "Compl." refer to the Complaint, filed on January 16, 2020, ECF No. 1.
[2] The Summons and Complaint were served on the defendant on January 21, 2020, by leaving a copy with Marceline Ronio, the authorized agent designated to accept service of process. (See ECF No. 10).

1

FACTUAL BACKGROUND

In the Complaint, plaintiff alleges that defendant Cranbury is a limited liability company with a place of business located at 964 Sanford Avenue, Irvington, New Jersey. (Compl. ¶ 6). According to plaintiff, Cranbury owns and operates a website at the URL: www.cranbury overseasllc.com. (Id.) Plaintiff further alleges that Cranbury does business in New York. (Id.)

Plaintiff is a professional photographer, in the business of licensing his photographs for a fee. (Id. ¶ 5). Plaintiff has his usual place of business located at 189 Albrecht Durerweg, Amere, Flevoland 1328 TG Netherlands. (Id.) Plaintiff alleges that he photographed a wheat field (the "Photograph") and registered the Photograph with the United States Copyright Office; the Photograph was assigned registration number VA 1-884-171. (Id. ¶¶ 8-9).

According to plaintiff, defendant Cranbury ran the Photograph on its website without obtaining a license from plaintiff or permission from plaintiff to publish the Photograph. (Id. ¶¶ 10-11, Ex. B). By reproducing and publicly displaying the Photograph, which Cranbury has never been authorized to reproduce, display or use, defendant infringed on plaintiff's copyright. (Id. ¶¶ 13, 14). Plaintiff alleges that the defendant's acts were willful, intentional and purposeful and that plaintiff is entitled to either damages and defendant's profits pursuant to 17 U.S.C. § 504(b) or statutory damages of up to $150,000 per work infringed, pursuant to 17 U.S.C. § 504(c). (Id. ¶¶ 15-17). In addition, plaintiff seeks an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505. (Id. ¶ 18).

DISCUSSION

I. Default Judgment

   A. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id.; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b). The Clerk of the Court entered a default against defendants on June 9, 2020. To date, defendants have not moved to vacate the default judgement.

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. Accordingly, the plaintiffs are not entitled to a

3

default judgment as a matter of right simply because a party is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). The more money involved, the less justification for entering the default judgment. Id. Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

    B. Entry of Default Judgment

Plaintiff alleges a violation of the Copyright Act, 17 U.S.C. §§ 101 et seq. The Copyright Act is the principal statute protecting against copyright infringement. The goal of copyright protection is to "encourage the creator of an original work in a medium of expression . . . by giving the creator the exclusive right 'to reproduce' the work, 'to prepare derivative works,' 'to distribute

4

copies or phonorecords,' 'to perform' the work, and 'to display' the work." Warner Bros., Inc. v. Dae Rim Trading, Inc., 677 F. Supp. 740, 760 (S.D.N.Y. 1988) (quoting 17 U.S.C. § 106). Although the word "counterfeit" never appears in the Act, Section 501(a) of the Copyright Act proscribes the unauthorized reproduction and copying of works of an owner holding an exclusive copyright in an original work of authorship. 17 U.S.C. §§ 501(a), 102; see Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1113 (2d Cir. 1986).

"Copying" means "'the infringing of any of the copyright owner's five exclusive rights, described at 17 U.S.C. § 106.'" Microsoft Corp. v. Harmony Computers & Elecs., Inc., 846 F. Supp. 208, 210 (E.D.N.Y. 1994) (quoting S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1085 n. 3 (9th Cir. 1989)). Among the rights conferred upon the holder of a copyright are the exclusive rights to engage in and to authorize the reproduction of the copyrighted work in copies, 17 U.S.C. § 106(1), to prepare derivative works based on the copyrighted work, 17 U.S.C. § 106(2), and to distribute copies of the copyrighted work to the public by sale, rental, lease, or other transfer of ownership. 17 U.S.C. § 106(3). See Microsoft Corp. v. Harmony Computers & Elecs., Inc., 846 F. Supp. at 210-11.

It is well established that in order to prove the elements of a copyright infringement action, a plaintiff must show: (1) ownership of a valid copyright, and (2) that defendant violated one of the exclusive rights held by the plaintiff in the work. Sony Music Entm't, Inc. v. Does 1-40, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004) (quotation marks and citations omitted); see also Capitol Records, LLC v. ReDigi, Inc., No. 12 CV 95, 2013 WL 1286134, at *4 (S.D.N.Y. March 30, 2013); Psihoyos v. Pearson Educ., Inc., 855 F. Supp. 2d 103, 116 (S.D.N.Y. 2012) (citation omitted); Zappa v. Rykodisc, Inc., 819 F. Supp. 2d 307, 315 (S.D.N.Y. 2011); Pearson Educ., Inc. v. Kumar,

5

721 F. Supp. 2d 166, 175 (S.D.N.Y. 2010) (citations omitted). Under the Act, "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by section 106 through 122 . . . is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501. Thus, "[t]o establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991) (citing Harper & Row Publishers, Inc. v. National Enterprises, 471 U.S. 539, 548 (1985)).

Turning to the first element required to establish a claim for infringement, the Copyright Act provides that "a certificate of [copyright] registration made before or within five years after first publication of the work shall constitute evidence of the validity of the copyright." 17 U.S.C. § 410(c); see also CJ Prod. LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d 127, 142 (E.D.N.Y. 2011); Yurman Design, Inc. v. Golden Treasure Imports, Inc., 275 F. Supp. 2d 506, 514 (S.D.N.Y. 2003). While the presumption of validity is rebuttable, see Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir.), cert. denied, 522 U.S. 908 (1997); Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 763 (2d Cir. 1991), it is the defendant's burden to prove the invalidity of the copyright. See Folio Impressions, Inc. v. Byer Cal., 937 F.2d at 763 (citation omitted).

Here, plaintiff has demonstrated ownership of the copyright rights to the Photograph, by providing the Certificate of Registration filed with the U.S. Copyright Office on December 12, 2013. (Liebowitz Decl.,[3] Ex. E, ECF No. 18-5). Since defendant has chosen not to appear in this

---

[3] Citations to "Liebowitz Decl." refer to the Declaration of Richard Liebowitz in support of the Motion for Default Judgment, filed on July 31, 2020, ECF No. 18.

action, plaintiff's proof that it holds the valid copyright had not been challenged, and the Court finds that plaintiff has satisfied the first element required to establish a claim for infringement.

With respect to the second element needed to establish an infringement claim, "[b]oth unauthorized production and unauthorized distribution of copies of copyrighted material constitute an infringement of the copyright." Paramount Pictures Corp. v. Doe, 821 F. Supp. 82, 89 n. 6 (E.D.N.Y. 1993) (citing 17 U.S.C. §§ 106(1) and (3)). Here, plaintiff has provided evidence in the form of copies of the Photograph itself and a screenshot of the webpage for Cranbury Overseas displaying the same Photograph. (Compl., Exs. A, B; see also Liebowitz Decl., Ex. B, ECF No. 18-2). Plaintiff has alleged that defendant was not given a license, nor did it have permission to display the Photograph, satisfying the second element demonstrating infringement. By failing to appear in this action, defendant has essentially conceded this element of plaintiff's copyright infringement claim.

Moreover, the allegations in the Complaint are sufficient to establish that the Photograph is "original." The Photograph is the result of Enzerink's creative process. See, e.g., Renna v. Queens Ledger/Greenpoint Star Inc., 2019 WL 1061259, at *3 (holding that plaintiff met the minimal burden of originality because the photos derived from plaintiff's "choice of timing, location, and subject matter"). Thus, Cranbury undeniably copied original elements of plaintiff's work, by using the exact photograph taken by Enzerink and publishing it on its website. See Feist Publ., Inc. v. Rural Tel. Serv. Co., 499 U.S. at 361.

Furthermore, it is beyond dispute that defendant is in default. The corporate defendant, Cranbury, has not responded to the Complaint nor has counsel appeared on behalf of the corporate defendant. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the

7

defendant's] default is crystal clear – it does not even oppose this motion"). It is well settled in this Circuit that "a corporation [ ] cannot proceed pro se in federal court." Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Tri-State Acoustics Corp., No. 13 CV 05558, 2014 WL 4537481, at *5 (E.D.N.Y. Sept. 11, 2014); see also Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam). Moreover, the amount of money involved in this case is not great; therefore, unlike cases with millions of dollars potentially at stake, here the Court does not have to hesitate before entering default judgment. See e.g., Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, in part because plaintiff's damages request ran "well into the millions of dollars," and giving defendant an opportunity to contest the entry of default). Given the amount of time afforded defendant and its apparent lack of interest in participating in these proceedings, there is no compelling reason to further delay judgment.

Accordingly, it is respectfully recommended that plaintiff's motion for entry of a default judgment be granted and that damages be awarded as set forth below.

II. Damages

Plaintiff's allegations in connection with damages, unlike its allegations pertaining to liability, are not deemed admitted in the context of a default judgement. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). It is the plaintiff's burden to prove damages and establish its entitlement to recovery in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. Id. While "the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122

8

F.R.D. 151, 156 (S.D.N.Y. 1988) (citing Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985)), aff'd, 873 F.2d 38 (2d Cir. 1989).

Plaintiff has filed reasonably detailed affidavits, exhibits, and a memorandum of law pertaining to the damages requested. As such, the Court has more than sufficient information to make an informed recommendation regarding damages without an evidentiary hearing.

A. Damages for Copyright Infringement

Section 504 provides for damage awards in cases of copyright infringement. Under the Copyright Act, "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, . . . or (2) statutory damages as provided by subsection (c)." 17 U.S.C. § 504(a). The statute and the cases in this circuit interpreting the statute have made it clear that the victim of a copyright infringement is entitled to elect damages based on the actual damages suffered, plus any additional profits, or he may elect statutory damages to be awarded within certain specified limits. See Twin Peaks Prods., Inc. v. Publications Int'l, 996 F.2d 1366, 1380 (2d Cir. 1993) (permitting plaintiff to elect statutory remedy where actual damages were not ascertainable); see also Aleshouse v. Ultragraphics, Inc., 754 F.2d 467, 469 (2d Cir. 1985); Engel v. Wild Oats, Inc., 644 F. Supp. 1089, 1091 (S.D.N.Y. 1986).

Here, plaintiff has elected to recover statutory damages under 17 U.S.C. § 504(c). (Liebowitz Decl. ¶ 15). Under the Copyright Act, the Court may award statutory damages of not less than $750 or more than $30,000, as the Court deems just. 17 U.S.C. § 504(c)(1). In addition, the Act authorizes an award of enhanced damages of not more than $150,000 where the violation was willful. 17 U.S.C. § 504(c)(2). Plaintiff argues that in seeking statutory damages, he is hoping to deter willful infringers. (Liebowitz Decl. ¶ 15 (citing Lauratex Textile Corp. v. Allton Knitting

9

Mills, Inc., 519 F. Supp. 730, 733 (S.D.N.Y. 1981) (stating that an award of statutory damages "provide[s] a deterrent for would-be infringers"); Capital Records, Inc. v. MP3tunes, LLC, 48 F. Supp. 3d 703, 732 (S.D.N.Y. 2014) (explaining that an award of statutory damages is "by definition a civil penalty")). In considering an award of statutory damages under the Act, the Court may consider the expenses saved and profits reaped by defendants, plaintiff's loss of revenue, and the infringer's state of mind. Bryant v. Media Right Prods., Inc., 603 F.3d 135, 143-44 (2d Cir. 2010). Plaintiff urges the Court to recognize the "long-line of cases" where defaulting defendants in copyright cases have been assessed $30,000 in statutory damages for similar instances of copyright infringement. (Liebowitz Decl. ¶ 16). Specifically, plaintiff has cited and attached a number of decisions in this Court and in the Southern District of New York where the courts have awarded $30,000 in statutory damages on default. Lucerne Textiles, Inc. v. H.C.T. Textiles Co., No. 12 CV 5456, 2013 WL 174226, at *3 (S.D.N.Y. Jan. 17, 2013); Tokar v. 8 Whispering Fields Assocs., Ltd., No. 08 CV 4573, 2011 WL 7445062, at *2 (E.D.N.Y. Dec. 13, 2011); Microsoft Corp. v. Computer Care Ctr., Inc., No. 06 CV 1429, 2008 WL 4179653, at * 11 (E.D.N.Y. Sept. 10, 2008).

Recognizing the important deterrent purpose served by an award of statutory damages and the fact that defendant's violation here appears to have been willful, the Court respectfully recommends an award of statutory damages under the Copyright Act of $30,000 for defendant's violation of Section 504(c)(1).

B. Plaintiff's Attorneys' Fees and Costs

Plaintiff also seeks an award of $440 in costs and $1,912.50 in reasonable attorneys' fees. Under the Copyright Act, the court has discretion to award "the recovery of full costs," which include attorneys' fees. 17 U.S.C. § 505. A fee award is not automatic under the statute, but rather

"lies within the sole and rather broad discretion of the [c]ourt." Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006).[4]

In awarding reasonable attorneys' fees, courts employ the "lodestar" method, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors. Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999); Cowan v. Ernest Codelia, P.C., 2001 WL 30501 at *7.

1. Reasonable Hourly Rate

In assessing whether legal fees are reasonable, the Court must first determine a reasonable hourly rate for the legal services performed. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 183-84. The Second Circuit has adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case

---

[4] In deciding whether to award fees under the Copyright Act, courts are admonished to consider "whether imposition of attorney's fees will further the interests of the Copyright Act – specifically, 'encouraging the raising of objectively reasonable claims and defenses, . . . [and] to deter infringement.'" Mahan v. Roc Nation, LLC, No. 14 CV 5075, 2015 WL 4388885, at *2.

11

>and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases . . . .

Id. at 187 n. 3 (citation omitted); see also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007). The "party seeking the award has the burden of submitting evidence supporting the hours worked and rates charged." Id., accord S.W. ex rel. N.W. v. Bd. of Educ. of City of New York, 257 F. Supp. 2d 600, 603 (S.D.N.Y. 2003), aff'd and remanded sub nom. A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65 (2d Cir. 2005).

Plaintiff requests that counsel be compensated at the hourly rate of $425. In support, Mr. Liebowitz states that he is a founding member and managing partner of the Liebowitz Law Firm (the "Firm"), which specializes in copyright enforcement of photographs and videos. (Liebowitz Decl. ¶ 18). He graduated from law school in 2015 and represents that he has personally filed over one thousand copyright infringement cases in the Eastern and Southern Districts of New York since January 2016. (Id.) As a result, he asserts that he has developed an expertise in the field. (Id.) In his Declaration, Mr. Liebowitz cites a number of cases in support of his claim that his hourly rate of $425 is "well below" what other courts have awarded for partners. (Id. ¶ 19 (citing Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC, No. 13 CV 2493, 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014); Mahan v. Roc Nation, LLC, No. 14 CV 5075, 2016 WL 4718018, *2 (S.D.N.Y. Sept. 9, 2016)).

However, the Court finds that $425 is an unreasonable hourly rate in this case. See Dermansky v. Tel. Media, LLC, No. 19 CV 1149, 2020 WL 1233943, at *7 (E.D.N.Y. Mar. 13, 2020) (finding that $425 per hour was an unreasonable rate for Richard Liebowitz in a similar

default judgment action). "The prevailing rates for attorneys in the E.D.N.Y. are approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." Id. (citing Rudler v. Houslanger & Assocs., PLLC, No. 18 CV 7068, 2020 WL 473619, at *4 (E.D.N.Y. Jan. 29, 2020) (internal quotation marks and alterations omitted) (collecting cases)). However, courts in this district have questioned Mr. Liebowitz's lack of clarity around his actual expertise and his relatively short amount of time practicing law, granting him the rate of a junior partner or senior associate instead. Id.; see also Balhetchet v. Su Caso Mktg. Inc., No. 19 CV 4475, 2020 WL 4738242, at *5 (E.D.N.Y. Aug. 14, 2020) (granting Mr. Liebowitz the rate of $350 an hour). Indeed, some courts in this district have granted a rate of as little as $200 an hour for Mr. Liebowitz. See, e.g., Lowery v. Fire Talk LLC, No. 19 CV 3737, 2020 WL 5441785, at *6 (E.D.N.Y. June 29, 2020), report and recommendation adopted, 2020 WL 5425768 (E.D.N.Y. Sept. 10, 2020) (finding Mr. Liebowitz's experience to be akin to a fourth-year associate for the purposes of determining a reasonable fee and granting $200 per hour as a more suitable hourly rate). As such, the Court recommends granting Mr. Liebowitz only $350 per hour, rather than his requested rate of $425 per hour, as appropriate for the work performed on this case. In awarding attorneys' fees, the Court is mindful of the fact that default actions are relatively simple legal matters, while taking into account the attorneys' degree of skill and the Court's own experience dealing with similar claims.

    2. Hours Spent on the Case

In order to determine whether the requested fee is reasonable, the Court must also consider whether the time spent on the case was reasonable. In his Declaration, Mr. Liebowitz indicates that he spent 4.5 hours performing work in connection with this action, including the review and filing

13

of the Complaint, preparing and processing documents for service, performing services in connection with the preparation of the Request for entry of Default, Motion for Default Judgment, and his own Declaration. (Liebowitz Decl. ¶ 19).

Having reviewed the time spent and services rendered, the Court finds them to be reasonable in light of the procedural history and issues raised by this case. Accordingly, the Court respectfully recommends that plaintiff be awarded a total of $1,575.00.

   3. Costs

Plaintiff also requested an award of costs in the amount of $440. (Liebowitz Decl. ¶ 19). The Copyright Act provides that a court may in its discretion "allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. Plaintiff's request for costs associated with this action include $400.00 in filing fees, and $40 in service fees. (Liebowitz Decl. ¶ 19). Taking judicial notice of the filing fees in this district, the Court respectfully recommends that plaintiff be awarded costs in the amount of $440.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that plaintiff's motion for default judgment be granted, and that plaintiff be awarded $30,000 in statutory damages under the Copyright Act, and an additional $1,575 in attorneys' fees and costs, for a total award of $31,575.00.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28

U.S.C. Section 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      February 26, 2021

                                          /s/ Cheryl L. Pollak
                                          Cheryl L. Pollak
                                          Chief United States Magistrate Judge
                                          Eastern District of New York